UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CELIA WEISS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:04-CV-027RM |
| ) | |
| INDIANA UNIVERSITY BOARD OF ) | |
| TRUSTEES, INDIANA UNIVERSITY ) | |
| SOUTH BEND, INDIANA UNIVERSITY ) | |
| and JON MEYER, ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Celia Weiss twice applied unsuccessfully for a job of manager of administrative and outreach services for the Indiana University-South Bend ("IUSB") School of the Arts. She believes her lack of success flows from a complaint she filed against the School of the Arts' dean, Jon Meyer, alleging that Dean Meyer had discriminated against her on the basis of her gender, sex, and had retaliated against her. Ms. Weiss sues Indiana University, IUSB, Indiana University Board of Trustees, and Jon Meyer under Title VII, 42 U.S.C. § 2000e. The defendants have moved for summary judgment. For the reasons that follow, the court grants their motion.

I.

Dean Meyer served as dean from August 2000 to mid-January 2001. Ms. Weiss was an adjunct professor teaching piano, and also worked as part of Dean Meyer's staff as Toradze piano coordinator. In mid-January 2001, Thomas Miller succeeded Dean Meyer as dean. Dean Miller tried to hire Ms. Weiss for the manager position on his staff (a position that would absorb Ms. Weiss's duties as Toradze piano coordinator), but Chancellor Perrin imposed a hiring freeze. When a new chancellor took office in 2002, Dean Miller initiated a search and screen committee to review candidates for the manager position. Dean Miller submitted Ms. Weiss, but another candidate was selected.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party." Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in

2

rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

Ms. Weiss has worked for 29 years as an adjunct professor in the IUSB School of the Arts. She also worked as the coordinator for the Toradze Piano Studio and Festival from 1997 to 2001, when the grant expired. That position was a full-time position that involved outreach activities that required her to work off campus at times. Full-time positions at IUSB require 40-hour work weeks; the normal business hours are 8:00 a.m. to 5:00 p.m. on weekdays, though managers can approve alternative or flexible work schedules. While serving as Toradze coordinator, Ms. Weiss also was her church's part-time music director. That position occasionally required her to leave the IUSB campus during the work day, though she says such occasions were rare. Ms. Weiss testified that no one ever discussed such absences with her, and that she made up all the time she was away from work.

Dean Meyer, Ms. Weiss's supervisor in the last five months of 2000, brought issues with her performance and hours to her attention. He says he told others

3

— Dean Miller, Human Resources Director John Hundley, Affirmative Action Officer Patricia Dees, and Vice Chancellor Alfred Guillaume — that Ms. Weiss wasn't working a 40-hour week, but he put nothing in writing and issued no written reprimand. Others complained to Dean Miller when he was acting dean of the School of Arts and commented about her hours. Dean Miller saw this as a morale problem.

Ms. Weiss, in turn, had issues with the way Dean Meyer treated her. In her deposition, she testified that he once followed her to the entrance of the women's bathroom and he called in to summon her back to work; this, she says, made her feel scared and that her privacy was violated. In October 2000, Ms. Weiss filed an "internal complaint" with Ms. Dees against Dean Meyer for gender discrimination, harassment, and retaliation. Ms. Dees concluded that there was a conflict between Dean Meyer and Ms. Weiss, but that it was not unlawfully motivated. Several School of Arts faculty members, male and female, had problems with Dean Meyer.

In a November 2000 memorandum, Ms. Dees noted that Ms. Weiss thought Dean Meyer "used intimidation, manipulation, and humiliation" in the workplace, but there "has been no sexual harassment." She also noted that Dean Meyer treated men "just as badly as he has treated the women — using intimidation, manipulation and humiliation." When asked if changes were needed in the memorandum, Ms. Weiss signed it without change. She says she understood the memo said the problems with Dean Meyer related to her work; she also says she mentioned to Ms. Dees that the summary did not mention the issue of gender

4

discrimination.

Dean Meyer resigned his deanship in mid-January 2001 after a no-confidence vote by the School of the Arts faculty, and became Vice Chancellor Guillaume's special assistant. A few months later, he became acting development director, and now is a full-time IUSB faculty member. Dean Miller became Dean of the School of the Arts in mid-March 2001.

In summer 2001, IUSB posted a job opening for the newly created position of manager of administrative and outreach services in the School of Arts. Ms. Weiss applied. Dean Miller, pursuant to University policy related to searches for professional staff positions, assembled a committee to review applications, interview candidates, and recommend candidates. Dean Miller chose Ms. Weiss for the position, but she wasn't hired because of a hiring freeze on all staff positions that Chancellor Ken Perrin implemented for budgetary reasons. Dean Miller asked Chancellor Perrin to let him hire Ms. Weiss anyway because the position was needed so badly; Chancellor Perrin declined. Ms. Weiss does not concede that a hiring freeze existed. She notes the absence of written material to show its validity, or that it was invoked to bar employment of anyone but Ms Weiss. Nonetheless, the evidence is unrebutted that a hiring freeze was imposed.

When Una Mae Reck succeeded Chancellor Perrin on July 1, 2002, thirty-two positions were either vacant or filled on an interim or acting basis. Chancellor Reck's installation effectively rescinded Chancellor Perrin's hiring freeze.

In summer 2002, Dean Miller notified Human Resources Director Hundley

and Affirmative Action Officer Dees that he wanted to hire Ms. Weiss as manager of administrative and outreach services. Chancellor Reck denied Dean Miller's request to waive the search process; although the search process had been done only a year earlier, it was under a different chancellor. All members of the new search and screen committee that Dean Miller assembled already knew Ms. Weiss. The committee submitted names for the position, with Ms. Weiss and Michelle Morgan-Dufour tied for first choice.

Although Mr. Meyer wasn't involved in the search committee's work, he told Dean Miller he didn't want Ms. Weiss hired for the position for fear that Ms. Weiss would continue to say unkind or untrue things about him. The work of a search and screen committee is supposed to be confidential. Dean Miller says he considered but eventually ignored Mr. Meyer's comments because he felt he should make his own decision without the kind of input Mr. Meyer was providing, and recommended Ms. Weiss for the position.

Dean Miller prepared a memorandum to Mr. Hundley and Ms. Dees discussing the candidates the committee had recommended. Vice Chancellor Guillaume's approval (after consulting with the dean and chancellor) was needed for the final hiring decision. In a move unprecedented for IUSB, Affirmative Action Officer Dees was asked to offer advice as to whether to hire Ms. Weiss. Mr. Meyer told Vice Chancellor Guillaume that he was concerned about things Ms. Weiss might say about him (Mr. Meyer); Vice Chancellor Guillaume says Mr. Meyer's anxieties were unpersuasive to him. To Dean Miller's surprise, Vice Chancellor

6

Guillaume selected Ms. Morgan-Dufour.

Vice Chancellor Guillaume did not commit his reasons for that decision to writing until Ms. Weiss's complaint reached the EEOC. He says his knowledge of issues about Ms. Weiss's working hours when she was the Toradze Coordinator played a part in the decision. When Ms. Weiss was serving in that position, Vice Chancellor Guillaume had sent her a letter saying that her efforts were essential to IUSB's ability to fulfill its mission to its students and community.

Mr. Meyer spoke to Chancellor Reck about Ms. Weiss's past history with regard to work hours, which he viewed as a violation of laws governing ghost employment. Vice Chancellor Guillaume told Chancellor Reck how close the candidates ranked and shared his opinion, Dean Miller's opinion, and the committee's report. Chancellor Reck never approved Ms. Morgan-Dufour's hiring or Ms. Weiss's rejection.

None of the people in the decision-making process sought Mr. Meyer's thoughts about Ms. Weiss.

II.

Ms. Weiss believes that her failure to obtain the manager position resulted unlawful retaliation for filing her internal complaint against Mr. Meyer in October 2000. This belief flows from irregularities in the hiring process, Mr. Meyer's attempts to insert himself into the hiring process, and that the ultimate decision maker was someone who she believes was not supposed to be involved in the

7

hiring process. She felt she was a better candidate for the position because of her education and experience although she says she can see how the committee could, in good faith, consider Ms. Morgan-Dufour's application just as impressive.

Ms. Weiss also claims, pursuant to 42 U.S.C. § 1983, that Mr. Meyer acted under color of state law and deprived her of her due process and equal protection rights. Mr. Meyer says he read news reports of ghost employment charges being brought against local government employees and their supervisors for being paid for hours they had not worked, and that in October 2002, he also read an internal University publication on this subject. He says he brought up his concerns about Ms. Weiss's hours in 2002 and 2003 out of concern about Indiana's ghost employment laws.

Ms. Weiss's complaint contained a state law claim that Mr. Meyer interfered with her contractual rights, but she abandoned that claim in her summary judgment response.

A.

Ms. Weiss and IUSB disagree on the standard by which the court is to assess the sufficiency of her case. The defendants say Ms. Weiss must a establish prima facie case of retaliation by showing that she engaged in statutorily protected activity and suffered an adverse employment action, and the existence of a causal link between the protected activity and the adverse action. Miller v. American Family Mutual Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000); Filipovic v. K & R

Exp. Sys., Inc., 176 F.3d 390, 398 (7th Cir. 1999); Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 885 (7th Cir. 1998). IUSB says that if she makes out a prima facie case of retaliation, and if IUSB responds with a legitimate non-retaliatory reason for its action, Ms. Weiss must demonstrate that the proffered reason is a pretext for retaliation. Miller v. American Family, 203 F.3d at 1007; Rennie v. Dalton, 3 F.3d 1100, 1108-1009 (7th Cir. 1993). IUSB claims entitlement to summary judgment because Ms. Weiss didn't engage in any protected activity and can't establish a causal link between the filing of her internal Affirmative Action Complaint and the decision to hire someone else; even if she could overcome those hurdles, IUSB says Ms. Weiss cannot undermine its legitimate, nondiscriminatory reason for not hiring Ms. Weiss.

Ms. Weiss bases her different view of the standard on Stone v. City of Indianapolis Pub. Utilities Div., 281 F.3d 640, 643 (7th Cir. 2002). She reads Stone as holding that once a plaintiff comes forth with sufficient evidence that an adverse employment action resulted from unlawful retaliation, the plaintiff need not also prove a causal nexus or pretext to survive summary judgment. Since a causal link need not be shown as Ms. Weiss reads Stone, she says it is enough if she presents direct evidence that she was not hired for reasons associated with retaliation.

As the court reads Stone, its holding has more dimensions. Stone clarified that a plaintiff trying to prove retaliation under the indirect method need not come forth with evidence of a "causal link" between the protected conduct and the

9

adverse employment action: "Evidence, though not conclusive, that the cause was retaliation should be enough to entitle the plaintiff to a jury trial unless the defendant can produce uncontradicted evidence that he would have fired the plaintiff anyway, in which event the defendant's retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm." Stone v. Indianapolis Pub. Utilities, 281 F.3d at 643; *see* Mannie v. Potter, 394 F.3d 977, 984 (7th Cir. 2005) ("Formerly, the plaintiff was also required to establish a 'causal link' between the adverse employment action and the protected conduct. But in Stone, . . . in an opinion that was circulated under Rule 40(e), we held that plaintiffs seeking to prove retaliation under the indirect method need not show 'even an attenuated causal link.' . . . Nevertheless, in light of some decisions issued soon after Stone in which the 'causal link' language persists, the district court in this case applied that test in addition to the other factors. Mindful that some confusion remains, we clarify again that no 'causal link' is necessary under the indirect method.").

The Stone holding addressed only one of the ways by which a retaliation plaintiff may prevail at the summary judgment stage:

> The plaintiff in a retaliation case should have two (and only two) distinct routes to obtaining/preventing summary judgment. One, the more straightforward, the one that is unrelated to McDonnell Douglas, is to present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complains. If the evidence is uncontradicted, the plaintiff is entitled to summary judgment. If it is contradicted, the case must be tried

10

> unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation.
>
> The question of how much evidence the plaintiff must present to establish a triable issue that the adverse employment action of which he complains was retaliatory is not susceptible of a general answer. But we remind that mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue.
>
> The second route to summary judgment, the adaptation of McDonnell Douglas to the retaliation context, requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

281 F.3d at 644 (citations omitted). These are the yardsticks against which the court must measure Ms. Weiss's retaliation claim at the summary judgment stage.

B.

Under either approach, Ms. Weiss must prove that she engaged in activity protected by Title VII, Mattson v. Caterpillar, Inc., 359 F.3d 885, 889 (7th Cir. 2004), and IUSB contends that she did not do so. IUSB concedes that a retaliation plaintiff is not required to prove that what she opposed was a violation of Title VII. Fine v. Ryan Int'l Airlines, 305 F.3d 746, 752 (7th Cir. 2002). For her to have a good faith belief that her activity relates to unlawful discrimination, though, what

11

she opposed must have been the kind of activity that supports a charge of discrimination. Hamner v. St. Vincent Hosp. and Health Care Ctr, Inc., 224 F.3d 701, 707 (7th Cir. 2000). Ms. Weiss admitted during the University's investigation (and at her deposition) that there was nothing sexual in nature about Dean Meyer's conduct toward her and that Dean Meyer treated the men and women in the School of the Arts equally badly.

IUSB demands more than the law requires. Title VII protects from retaliation one who "reasonably believed in good faith that the practice she opposed violated Title VII," Fine v. Ryan Int'l Airlines, 305 F.3d at 752, unless the claim was "utterly baseless." Mattson v. Caterpillar, Inc., 359 F.3d at 891. It appears quite likely that Ms. Weiss could not have prevailed on a Title VII claim based on the conduct of which she complained to IUSB, but her complaint was not utterly baseless.

C.

IUSB turns next to the strength of Ms. Weiss's case under the direct method, and says she lacks sufficient direct evidence.

> [D]irect evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus. However, it should not be surprising that in today's workplace environment such admissions are rarely, if ever, made or encountered. Therefore, under the direct method we now also allow circumstantial evidence to be introduced which would allow a jury to infer intentional discrimination by the decision-maker.

Hottenroth v. Village of Slinger, 388 F.3d 1015, 1028 (7th Cir. 2004) (internal

12

quotations and citations omitted).

Ms. Weiss has virtually no direct evidence of retaliatory motivation. Her complaint of gender discrimination preceded the decision not to promote her by more than two years. Such a time frame cannot support an inference of retaliatory intent. *See* Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 274 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."). Ms. Weiss is correct that temporal proximity isn't an element of a retaliation case, Lalvani v. Cook County, 269 F.3d 785, 791 (7th Cir. 2001), but it often is the most central component of a case based on direct evidence. *See, e.g.*, Lang v. Illinois Dep't of Children and Family Svcs., 361 F.3d 416, 419 (7th Cir. 2004); Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004). Ms. Weiss's case finds no support in temporal proximity.

Ms. Weiss points to her unsuccessful candidacy in 2001, thwarted by a hiring freeze that she deems suspicious. Vice Chancellor Guillaume had nothing to do with the 2001 events, though, so those events can tell a jury nothing of Vice Chancellor Guillame's motivation in 2002 and 2003. She notes that the 2002-2003 selection process differed somewhat from that described in IUSB's written policy; even if this is so, it does not suggest retaliation as a reason. The same must be said of the absence of any immediate written explanation for Vice Chancellor Guillame's decision. Finally, there are Mr. Meyer's contacts with those involved in the selection process, but there is no evidence that Mr. Meyer ever mentioned Ms. Weiss's internal complaint against him. Those contacts could help

13

bolster a case based on other direct evidence, but they do not constitute such a case.

D.

To succeed under the McDonnell Douglas approach, a retaliation plaintiff complaining of a failure to promote must show:

> that 1) she is a member of a protected class (or performed the protected act of filing a complaint), 2) she is qualified for the position or, if already employed, has met the defendant's legitimate work expectations, 3) the defendant took adverse employment action against her and 4) the defendants treated similarly situated employees outside of the protected class (or who did not complain) more favorably. If these elements are established, the prima facie case of intentional discrimination is established and the burden shifts to the defendant to provide a nondiscriminatory reason for the employment action. If the defendant successfully provides a nondiscriminatory reason, the presumption of discrimination disappears and the plaintiff must show that the articulated nondiscriminatory rationale is pretext. This means the plaintiff must show by a preponderance of the evidence that the proffered explanation is false and that discrimination was the real reason for the adverse employment action.

Volovsek v. Wisconsin Dep't of Agric., Trade and Consumer Prot., 344 F.3d 680, 692 (7th Cir. 2003)(citations and quotations omitted); *accord*, Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 897 (7th Cir. 2003).[1]

---

[1] It is striking that the Volovsek court continued to speak of the retaliation plaintiff's burden to come forth with sufficient evidence to prove pretext by a preponderance of the evidence after the Stone court seemed to say that a retaliation plaintiff need not prove pretext to get to trial. Stone v. City of Indianapolis Pub. Utilities Div., 281 F.3d at 643. The language of Stone suggests that the adverse employment action consisted of disciplinary action or reduction in existing conditions of employment rather than a failure to promote. If fully applicable in promotion situations, the Stone formulation would seem to allow any unsuccessful (though qualified) applicant to get to trial if the applicant had ever engaged in protected activity (to the decision maker's knowledge) and has even the slightest evidence to

Ms. Weiss hasn't shown that there were no other qualified applicants who had not engaged in activity protected by Title VII. The search and screen committee also recommended Nancy Lichenstein to Dean Miller for consideration for the manager position. If Ms. Lichtenstein ever engaged in activity protected by Title VII, the summary judgment record does not disclose it. Ms. Weiss cannot be said to have shown that she was treated differently from "any similarly situated employee who did not file a charge." Stone v. City of Indianapolis Public Utilities Div., 281 F.3d at 644; *see also* Mitchell v. Dutchmen Mfg., Inc., 389 F.3d 746, 750 (7th Cir. 2004) ("Failure to satisfy any one element of the prima facie case dooms an employee's retaliation claim.").

Whether this record is considered under the direct method of proof or the indirect method, no reasonable trier of fact could find that IUSB's choice of Ms. Morgan-Dufour for the manager position was caused by any intent to retaliate for Ms. Weiss's gender discrimination complaint against Mr. Meyer.

E.

Ms. Weiss also sues Mr. Meyer under 42 U.S.C. § 1983, a claim Ms. Weiss describes as "basically coincidental" with the retaliation claim. It may be that resolution of the retaliation puts the § 1983 claim to rest, but it cannot succeed in any event: Ms. Moore had no property interest entitled to due process

---

cast doubt on the employer's stated reason for the promotion decision. This is not such a case, though; Ms. Weiss's case could not proceed even under a strict application of the Stone articulation of the indirect method of proof.

15

protection in prospective employment in the manager position, *see* <u>Moore v. Muncie Police and Fire Merit Com'n</u>, 312 F.3d 322, 326 (7th Cir. 2002), and "the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause." <u>Boyd v. Illinois State Police</u>, 384 F.3d 888, 898 (7th Cir. 2004).

### III.

For the foregoing reasons, the court GRANTS the defendants' summary judgment motion [docket # 28] and DENIES AS MOOT the defendants' motion to extend or vacate pretrial deadlines and trial date [docket # 36].

ENTERED:  <u>April 29, 2005</u>

<u>/s/ Robert L. Miller, Jr.        </u>
Chief Judge
United States District Court

cc:   B. Hurley
      J. Hull, T. Brunner